Thank you. The argument of the appellant is twofold. The appellant believes when all the evidence is taken in the light most favorable to them, including any reasonable inferences therefrom, a reasonable jury could conclude that the decedent did not have a cologne bottle in his hand at the time he was shot. Secondly, the appellant contends that even if he did have the cologne bottle in his hand, given some of the disputed and undisputed facts in this case, a reasonable jury could conclude that the shooting was still excessive under federal and state law. Here is some of the evidence that supports a possible finding that he had no cologne bottle in his hand. Let me ask you this. I think you have two questions. I'm going to let Judge Smith go first, and this is Judge Callahan. I'll go second. So, Judge Smith? Okay. I was just going to say, it sounds like you're asserting, counsel, that the fact that a jury might disbelieve Officer McGuire precludes a finding of qualified immunity. Is that your position? In part it is, because if a jury disbelieves an officer on some material point, then they can disbelieve the officer on other material points. Then there are then disputed issues of material facts, and it's the appellant's position when there are disputed issues of material facts, qualified immunity is inappropriate. Well, certainly there may be circumstances where that may be the case, but it sounds to me if we adopted your position, qualified immunity would simply disappear, because all anyone would have to do to eliminate that possibility would be to assert that a reasonable juror could disagree with or disbelieve what an officer says. Well, not necessarily. I do think qualified immunity has to be applied by a case-by-case basis, and obviously the facts of each case are different. I think when there are disputed issues of facts and reasonable inferences could be drawn one way or the other, it's that type of case that I believe is not appropriate for qualified immunity. And I think in this case there are some disputed issues of facts that are very important. Well, you know, qualified immunity does present, this is Judge Callahan, it does present, it's a little bit different on summary judgment on qualified immunity, because I'm assuming you're not disputing the fact that the officer believed he was in danger, the subjective belief. You're not disputing that, right? That's correct. What I think most likely happened is after the last command to stop, the decedent stopped, suddenly turned to his left, and the officer overreacted by firing one shot. The reason he only fired one shot is because if he really thought he saw a gun, I believe he would have fired more than one shot. So subjectively I think he overreacted when he saw him stop and turn to his left and later came up with the story that he had a cologne bottle in his hand. Well, there was a cologne bottle on the scene, but the thing is when you're looking at qualified immunity then it has to be, it's not only, you know, that would be the end of the inquiry. But then it goes to whether a reasonable officer would have. And so isn't that for the court to determine under the totality of the circumstances whether a reasonable officer would have believed that? Well, that's why I think the qualified immunity analysis is so tricky. I think different courts and even different judges have a little bit of a different take on it. I think to some extent there may be some cases that are so clear that that may be true, but I think in other cases where there's some uncertainty as to the fact, or even given those facts, whether or not that's reasonable or unreasonable force,  if, for example, he had had a cell phone in his hand rather than a cologne bottle, and our position is neither one looks like a gun, I think that's probably a question for the jury. I don't know if someone could say as a matter of law if an officer sees a cell phone and thinks it's a gun, he gets a free ride and it's automatically justified. So I think it's a very tricky analysis, and I think it's a case-by-case analysis. All right. I think I understand how you're posing the argument. In terms of you seem to be focusing on the material fact is the cologne bottle, but I think this is a different case than, let's say, hypothetically, had there been a witness that the officer said that the decedent turned towards him and pointed something. Let's say that were the officer's testimony, but let's say there was someone standing on the sidewalk and they said that the person never turned and they continued running. Would you concede that that's a more significant material fact than, say, what you're arguing on the cologne bottle? Absolutely. I agree with you, and obviously one of the reasons some of the opinions written by the Ninth Circuit is for judges to very carefully scrutinize the case where the only witness that could have disputed the officer's version is dead as a result of the use of lethal force. If I could, may I state what I believe is some of the evidence that supports the finding that he didn't have a cologne bottle in his hand, because I think even the defense would concede if he didn't the shooting was unjustified. Okay. Before you do that, counsel, it's Judge Smith again. I want to quote to you something from a Supreme Court case recently, Messerschmitt v. Millender. They said, Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law. With that in mind, is it your position that Officer McGuire was either plainly incompetent or knowingly violated the law? Yes, and I'll tell you why. And, you know, it happens in cases. I'm not saying he's a bad person or had any intent that day to go out and shoot someone, but I think he clearly overreacted, realized the shooting was bad because it turned out he didn't have anything in his hand, and then came up with a story to say he had a cologne bottle in his hand to try to justify what he knew, based on his training, was an inappropriate use of deadly force. So your theory is what other evidence, other than speculation, do you have that someone planted a cologne bottle at the location? Well, can I go through that? I have a list of about 15 points. Can I go through those very quickly? Sure. You're at seven and a half minutes right now, so I'll tell you when you're at three so you can reserve. Okay. So by way of background, this was only a detention. He was not under arrest. He had nothing in his hands, according to the officers when they first saw him, and when he started running, he had nothing in his hands. He also had nothing in his hands when he momentarily stopped and faced the officer. The officer did say he saw a couple of bulges in his pocket, presumably two, although he didn't know what they were. Well, and the officer also said that he turned and had a metallic object in his hand. Well, I haven't got there yet. Okay. But, I mean, if you're going to say what all the evidence is, you need to say all of it. I'm just trying to go chronologically. Okay. And the reason it's important is because by the officer's own testimony, approximately three to five seconds before the shooting, when the decedent turns towards him, he has nothing in his hand. And the reason that's important, he never saw him reach into one of his pockets, which he claimed these bulges were at, to retrieve an object. So I think that is at least part of the piece of evidence. Where did this object come from? Counsel, perhaps I misunderstand the evidence, but I thought that it was the testimony at least of the officer, and I think Officer McGuire, that the decedent turned, had the cologne bottle in his hand, that it was a shiny object. Am I mistaken? No, you are not mistaken. That is his testimony. What I am suggesting, Your Honor, is that he never saw anything in his hand three to five seconds before the last turn, and he never saw him reach into his pocket, which is where presumably the defense is suggesting he had these cologne bottles as he was running. Well, again, as Judge Smith, again, as I understand it, the officer saw that he had two objects, one in each pocket, and when he turned, according to the officer, one of the objects had been taken from his pocket, presumably, and was in his hand. It was shiny. Exactly, and that's the point I'm trying to get to.  On page 33 and page 40 of his deposition, which is on page 49 and 51 of the record, he says after the shooting he removed several cologne bottles from his pants. That's his testimony. It's also incorporated in separate statement items 26, 27. So if he moves several cologne bottles, removes several cologne bottles from the decedent's pants after the shooting, and there's only two cologne bottles, obviously circumstantially a reasonable inference is he never had a cologne bottle in his hand when he was shot, because if there's only two, how can he remove several cologne bottles after the shooting? Because there would only be one left. The other interesting fact is, one of the undisputed facts, is that there was one cologne bottle still in his rear pocket when other officers arrived. So presumably the only cologne bottle he removed after the shooting was the clear cologne bottle. And also obviously there's evidence about whether it was in the flower bed or the cement. I realize that by itself doesn't prove anything, but it's certainly circumstantial evidence that's strange that it lands in a flower bed after going up in the air, he moves it in the flower bed, and then for some unknown reason he moves it on the cement next to the decedent's pants. It just seems very peculiar, but I think the fact that he removed cologne bottles after the shooting... I should just let you know, Mr. Escalipo, you're at three minutes. Okay, I'm just going to finish this thought and then I'll... Okay. Thank you for that. So I'm just saying that the cologne bottle we would submit does not look like a gun, and there's a lot of circumstantial evidence, most importantly his own testimony, that he removed multiple cologne bottles, which is on page 33 and 40 of his transcript, part of the record, after the shooting. Well, what other cologne bottles could they have been? There's only two, and their own people say one was still in his back pocket, the dark-colored cologne bottle. Thank you. I'll save the rest of my time for reply. Okay, thank you. All right, go ahead. I'm going to have the counsel go to the podium, and before I start running the time, I'm just going to make sure you can hear Mr. Escalipo, okay? So if counsel for the city could state your name and your appearance, but don't start the time yet. Yes, good morning, Your Honors. Bruce Precht on behalf of the city of Porterville and Officer McGuire. Can you hear him fine? Yes, I can. All right, just let us know if there's any problem. Thank you. All right. Mr. Daniel, is it? Precht. Precht. Okay, Daniel's the middle name. All right, sorry. Go ahead and proceed. Can I ask you, why would this, the victim, when he was essentially turning around to surrender, pull a cologne bottle from his pocket? Did you think of a reason why a person would have done that? Does it make any sense? Well, a lot of things don't make sense on the part of Mr. Bowles' conduct. Why was he carrying two cologne bottles? Why was he looking into vehicles? A lot of things don't make sense. We could take the police officer's word. I mean, I don't doubt that they started chasing him for a reason. But the question is, and one of the things that I find difficult in this case, is that I can't think of a reason why this kid would have, or I don't know whether he was a kid or not, I don't know how old he was, this person would have, as he's turning around to surrender, have pulled a cologne bottle out of his pocket. Well, I can. I can. Okay. If it was stolen. People dump stolen property all the time when the police are chasing them. I mean, I don't want to answer your question. Well, I appreciate the answer. But, I mean, you know, I don't know. Maybe it's the mom in me that I'm always, you know, suspicious of kids. But, I mean, people frequently in chases try to dump what the contraband is. Well, and I think to answer Judge Corman's question, it's pretty clear that when Mr. Bowles ran from the officers in the first place, obviously recognizing they were the police because of the lights that they had in their badges and they were yelling at him to stop, warning him he would be tased if he didn't, it's pretty clear when he turned the first time on Officer McGuire, he was frustrated. He even said, why are you chasing me? Leave me alone. He then continued the pursuit and, quite frankly, kudos to Officer McGuire for not shooting at that point. When Mr. Bowles turned on him the first time, even though the officer knew he hadn't been patted down, knew there were bulges in his pants, used restraint, didn't fire. This isn't, oh, my God, he's turning on me, I'm going to shoot. This is essentially a one-witness case. This is. And there is a rule, as I understand it, that a jury can disbelieve the testimony of the defendant and find the opposite of what he's saying to be true, provided there's other evidence in the record that might support such a conclusion by the jury. But the jury can't ignore the evidence. The jury can't speculate, which is what the appellants are doing here. It's not a question of speculating. It's a question of what actually happened here. And if he was getting rid of stolen goods, it's strange that he would take one cologne bottle out of his pocket. And then the police officer, not following protocol, well, according to the police officer's testimonies, I understand it, he removed the cologne bottle when flying into a flower bed. He removed the cologne bottle with that gloves on, and he put it down right next to the victim's hand. That was not consistent, as I understand the record, with what he should have done. And one of the arguments, I believe, that they suggest in their brief was that he took the cologne bottle out of the victim's pocket, threw it into the flower bed, and the explanation that he took it out of the flower bed without putting gloves on it and put it back near the victim's hand was to explain how his fingerprints might have gotten on it. Well, and perhaps let me correct the record in one context. He never placed the bottle next to Mr. Bull's hand. Wherever it was placed next to him, I don't remember. He placed it on the sidewalk, and he explained his reason for doing that. Admittedly, if this was the calm of the police academy or something, certainly on television, we don't do that. The officer had just been involved in a shooting. It's a question of television. It's a question of what the – I only know about police protocol and with respect to this because of what I read. And as I understand it, he should not have taken that cologne bottle from the bed, certainly not without putting gloves on. In an ideal world, if he had gloves and if this was the calm of a situation where we're doing crime scene investigation, you're absolutely right. The officer, after the shooting, maintained his cover with his weapon on Mr. Bull's, didn't touch anything until Officer McCord, his backup officer, got there. This isn't a situation where, oh, my God, I just shot somebody. How am I going to cover it? And I'll come up with this phantom cologne bottle. I mean, the officer wasn't carrying a throw-down cologne bottle. The cologne bottle exists. No one's suggesting that he was carrying a cologne bottle for the purpose of flaking somebody who he intended to shoot. I accept the argument, which is that what may have happened here was that when the victim suddenly stopped and turned, the police officer just, I don't know, out of panic, out of tension, whatever, may have just fired one bullet without any malicious intent. Well, and as Judge Smith pointed out, qualified immunity is here to protect government officials from making reasonable mistakes. There's no question that Mr. Bulls did not have a gun. Well, let me kind of take you in some hypotheticals just in terms of in trying to sort of narrow this, because it does not appear to be disputed that the officer felt that he was in danger of his life. They're not disputing that. So then we're getting to the prong of qualified immunity, say, for example, whether a reasonable officer would have shared his apprehension. And so the issue is when may a judge determine that, when must a jury? And so I gave the hypothetical in terms of my understanding of the evidence is basically the decedent was running and was tiring and all of that, and so the shooting occurred at a point which I think is undisputed when he turned and pointed towards the officer. Then we get into what the appellant is raising or whether it was that there wasn't a cologne bottle or this, that, and the other. I think that the appellant's attorney said if there had been a witness that was standing there and said that the decedent never turned and was still just running, that would have been an issue, that would have been a different case. And would you concede that that would be a case where a court could have said, hey, that's got to go to a jury, a fact of whether he turned and whether a reasonable officer would, because it's disputed whether he turned and pointed something. Here that's not really disputed. What the dispute gets into, was it a cologne bottle or, you know, any of those type of things. If the decedent had just turned and pointed at the officer in light of all the other evidence, would that, so does it really matter about the cologne bottle? I mean, it adds to it that the officer said it was something metallic, but does it really matter? Probably under these circumstances in the big picture, not, because the difference between the two turns, and remember Mr. Bowles turned the first time and the officer didn't fire because he didn't perceive a quick action in it. But on the second time when he gets to the street, Mr. Bowles stopped with his back to the officer, reached for his waist area, and then quickly spun with his hands out in front of him, and the officer, of course, perceived the cologne bottle in his hand, which then flew out, and after the other officers get there before paramedics, that's when the officer, albeit perhaps not using ideal protocol, moved the bottle from the cologne bed for fear that it would be tampered with or kicked or anything else by medics coming to work on Mr. Bowles. He moved it to a place where it would be clearly visible so people would not destroy it or whatever. May I ask a couple of questions since we only have the testimony of Officer McGuire? Does the record indicate, does McGuire have any history of misconduct or previous fatalities or anything that shows up in the record? None whatsoever. Extremely competent officer, commended, no prior questionable conduct or shootings in the record. Well, does the offer say anything about that? I mean, does the record say anything about that, or are you just saying that now? I don't believe very well. I happen to know that. I don't know that. I can guarantee you there's nothing in the record that says that he has any prior problems. So one way or another, there's no evidence that suggests this is a pattern. Correct. With respect to the cologne bottle, is there any evidence that shows that the decedent knew that the police officer had a firearm out and was basically aiming at him before he turned? Obviously, we can only speculate what Mr. Bowles knew. So the record doesn't say. The reason I ask that is because if he didn't know that, I don't know how big the cologne bottle was, but if it's big enough, people sometimes use glass bottles to defend themselves. Perhaps he thought the officer was close by and he wanted to say, you know, stand back. He could have had the cologne bottle out in that way. But I guess we're all speculating to some degree, but that's another possibility in terms of why he might have taken that out if he did. Well, okay, but what's not speculation is he had announced himself as a police officer. Was he in plainclothes or was he in uniform? He was in plainclothes with his badge on his belt, his gun, and they had the emergency lights of their vehicle activated when they initially contacted him, and they yelled police officer several times. And then that's when the run started. Correct. Can I ask first two questions? First, could you refresh my recollection? Did the police officer yell any instructions at him? He was constantly yelling at him to stop, show me your hands, stop, police. There's a number throughout the record during this foot pursuit. In addition, in fact, Officer McCord, the other officer, was yelling stop or you'll be tased, which we know never occurred. But he was warned several times and told police. And the police officer was carrying the gun all the way through this chase? Toward the latter portion of the chase, yes, he did have his gun out, but didn't fire until the very end. When? McCord arrives within less than a minute after the shooting. He is trailing the foot pursuit. He went back to secure their vehicle, so he didn't leave it. So he doesn't actually see the turn? Did not see the turn. And obviously the court is painfully aware. But the issue here is obviously not what Mr. Bowles thought, but what a reasonable police officer would have thought given the conduct that I believe is undisputed of. Part of it, part of it, what you say is not entirely true, because there is an issue as to why he would have. Now it turns out the bulges were in the back pockets that he saw, but apparently he pulled the cologne bottle out of his waistband. It just doesn't make any sense to me. Aside from the fact that we're dealing with a one witness case where the victim is dead and there are other aspects about the case that are not, that don't fit quite right, it doesn't make any sense to me that this victim would have pulled this cologne bottle out of his, now the front of his person rather than the back when he turned around and, I mean, there's this expert who said the guy was trying to get down. I forget what area of expertise he was in. In fact, he was actually trying to get down. The question is what is enough to get to a jury here in a case like this. Not a question of whether the plaintiff is entitled to win on a summary judgment motion, but whether he's entitled to have a jury decide this. And I think Judge Smith pointed out that if the question was, why did someone pull a cell phone, pull a cologne bottle, spin on the police officer, then qualified immunity would never occur. Not so. That's not true. Well, I mean, we can always raise, you know. Not always. He could have had a gun. He could have. He could have had a weapon. I mean, this is, from what they, I don't know whether there's a picture of the cologne bottle on the record, but the metallic part of it, it was apparently, the way it's described in the brief, is it was a glass bottle and to the extent that there was a metallic part, it was actually the cover of the bottle. It's a round cylindrical chrome top, which you pointed quickly at an officer, like any reasonable officer would perceive it to be. I know, but the question is, why would he do that? What would it serve to point that at an officer who he presumably knew was carrying a gun, which he would have known if you accept the story, the explanation, that just before he turned a few minutes or seconds, he had turned once before and saw the police officer. So you have this guy running from a police officer. He knows he's got a gun, and he pulls out a cologne bottle when he turns around? I mean, to me, it doesn't make sense, but this is not a question of whether it makes sense to me or not, although I think a court is entitled to use its own judgment about the way people would normally act. It's a question of whether this is enough to get to a jury. In a one-witness case where the other person is dead, I mean, the Supreme Court has suggested in one of its cases that the burden of proof should be on the party who is capable of providing the evidence. That's one of the tests for even burdens of proof, and even in our opinions, there's one opinion that cautions that we should take into account in all of this is the fact that the victim is dead, and we have a one-witness case. That's what troubles me about this. I'm not saying who should win here, and I'm not prepared to render any kind of verdicts, but I think this should be a question for a jury. And I understand, and certainly I realize I'm out of time. Well, I think just your argument, as I understand it, is that the court's inquiry should be in what a reasonable officer would have thought and not an inquiry into why the victim or the decedent did what the decedent did. That you take all inferences in favor of what the factual, and then the court analyzes it in terms of whether a reasonable officer could have been in favor of his safety. Correct? I couldn't have said it better myself in just adding in the split-second tension of what occurred that night. Doesn't what a reasonable officer would have thought turn on whether or not this person was, at least in the context of this case, had removed the cologne bottle from his waistband with a metal top on it? That's what the reasonableness inquiry turns on. It's an issue. It's basically an issue of fact. I don't think those facts are disputed, frankly. Isn't there a picture of the cologne bottle in the record? There is, and I think the one in the record may not be the best photo, but it's the one that was submitted to the court. And, yes, there is a picture. All right. Thank you for your argument. And for rebuttal, Mr. Gallipo, you have 2 minutes and 15 seconds. Thank you. So I agree that this is a question of fact for a jury. Separate statement item 47 at page 89 of the record, which is not disputed by the defense, is that Sergeant Borales arrived and observed a clear-colored cologne bottle next to Mr. Bowles' left hand. So that's where that came from. And it is very peculiar that he would take a cologne bottle from a flower bed and put it next to his left hand. That's circumstantial evidence in the case, and we have to take all reasonable inferences. I also would say he was told to stop and get down. And there's evidence that was pointed out by the judge in this record that the downward bullet trajectory says or suggests he was getting down. So just because someone's running from the police, we all agree they couldn't shoot him for running under these facts. If he stopped in relation to the command and then turned, which is a natural tendency, that doesn't justify a shooting in this case. Well, let me ask you this, Mr. Gallipo. This is another hypothetical. Let's assume it wasn't a cologne bottle and it was a gun. And what the undisputed conduct of him turning and he had a gun. If the officer had waited, would he have been dead? Okay. If it was a gun, I agree with you, Your Honor. The problem with this case is there's evidence in the record, when you take all reasonable inferences, that he did not have the cologne bottle in his hand. That is the reason a jury has to decide this case. As the judge pointed out, it doesn't make any sense that he would pull a cologne bottle out of his waist where the only two bulges they saw were in the back of his pants. One of the cologne bottles was still in the back of the pants when other officers arrived. And so when the officer is testifying in his deposition that he's removing cologne bottles from his pants, and there's only two of them after the shooting, the only cologne bottle he could have removed is this clear cologne bottle. And that was after the shooting. All right. Thank you for your argument. Mr. Gallipa, thank you for your argument. I think we have both argument in mind. And so your time has expired, and I'm just going to make sure that my panel members don't have any additional questions. All right. They don't. So that will conclude argument, and this matter will stand submitted. Thank you both. Thank you, and thank you for giving me priority today.
judges: Korman, Callahan, Smith